IRWIN I. MILLARD v. HENRY CONRADE ET AL (COMRS.), ETC.

1. OFFICER CANNOT EXACT COMPENSATION FROM COUNTY EXCEPT UNDER STATUTORY AUTHORITY.

Compensation cannot be exacted from the county by an officer for services performed for the public unless such compensation is specifically provided for by statute.

2. PROBATE JUDGE NOT ENTITLED TO COMPENSATION FOR APPOINTMENT OF COUNTY TREASURY EXAMINERS.

There being no statutory provision authorizing the payment of compensation to the probate judge for services performed in the appointment of examiners of the county treasury under Sec. 1129 Rev. Stat., he is not entitled to compensation based upon the provisions of Sec. 547 Rev. Stat., which allows compensation such as is allowed the clerk of the court of common pleas, as Sec. 547 Rev. Stat. relates only to causes and proceedings between private parties.

3. COSTS AND FEES PROVIDED FOR IN SEC. 719 REV. STAT. ARE ONLY COMPENSATION AUTHORIZED IN LUNACY INQUESTS. .

Under Sec. 719 Rev. Stat., which provides the costs and fees in inquests of lunacy, the probate judge can have no compensation other than that actually provided for in this section, and as it does not provide compensation for making up a record the record is not to be made under favor of Sec. 546 Rev. Stat. where the title to real estate is not drawn in question, unless at the request of a party who may require it, at his own costs.

4. PROBATE JUDGE'S COMPENSATION FOR CONVICTION IN TRUANCY CASES NOT FIXED BY SEC. 6470 REV. STAT.

Where boys are prosecuted and convicted of offenses against the laws of the state under and in pursuance of Sec. 753 Rev. Stat. and are sent to the Boy's Industrial School no fees are allowable to the probate judge to be paid by the county, but where minors are convicted under Sec. 4022 Rev. Stat. *et seq.* for truancy, or in cases where no prosecution and conviction is required, not being criminal proceedings, the compensation of the judge is not fixed by Sec. 6470 Rev. Stat., and he may have the fees fixed for clerks of the courts of common pleas in like cases as authorized by Secs. 547, 759 and 4022-8 Rev. Stat.

ERROR to Lucas common pleas court.

**King & Tracy,** for plaintiff in error.

**W. G. Ulery** and **J. S. Martin,** for defendant in error.

PARKER, J.

Error is prosecuted here to the judgment of the court of common pleas. The plaintiff in error was judge of the probate court in and for Lucas county. He presented to the board of county commissioners accounts and claims for certain fees, in other words, certain fee bills were presented, which he claims should have been allowed by the commissioners and paid to him by the county. The bills were disallowed, and were taken under the statute to the court of common pleas. There he filed his petition. When the case came on to be heard, by agreement of the parties, no other pleading was filed, the facts stated in the petition being conceded, except the conclusion that the amounts claimed were due from the county to the claimant. That was the real question in controversy. In other words, it is contended on behalf of the county that there was no liability of the county for the fees and charges set forth in the fee bills presented. The bill of exceptions consists of this concession as to the facts, and these fee bills.

There are four bill for services, somewhat different in character and the plaintiff in error claims that they should be allowed under different statutes. One is for $6.79 for services in the matter of Henry Fisher, who, it appears, was sent to the Boys' Industrial School at Lancaster; another is for $6.99 in the matter of Lena Stern, who was sent to the Girls' Industrial Home; another is for $20.90 in the matter of James H. McGuire and Louis E. Krieger, who were appointed to examine the treasury in pursuance of the statutes providing for such examination; and the last is for $8.23 in the matter of State of Ohio v. Louis Shinaver, where an inquest of lunacy was held. In these particular bills it will be observed the amounts in controversy are not large, though it is said the question is of great public interest, because there are a great many other bills of the same sort pending in this county, amounting in the aggregate to a large sum, and that the question is one of interest throughout the state, because like bills are presented in other counties. It is stated in argument, and not disputed, and we have no doubt it is true, that in most cases of the same character such bills have been allowed by the county commissioners throughout the state, and that such bills have

Millard v. Conrade.

been allowed from county funds, almost from time immemorial, or as long, perhaps, as such services have been required. So that it may well be said that the fact that these bills are challenged is no reflection upon the officers presenting the bills, and if the court shall find they are not entitled to payment of any of them, that would not in any way impeach the integrity of the officers. It is urged, however, that we shall give great weight and consideration to the fact that these bills have been allowed in this way for a long time, and generally without question; but we are of opinion that this argument is not entitled to a great deal of weight. Such practices grow up, as we know, very often, when there is no support to be found for them in the provisions of the law.

I probably shall not take these different bills up in the order that I have mentioned them hereinbefore. I shall begin by discussing the bill for the appointment of the examiners of the county treasury. That appointment was made under Sec. 1129 Rev. Stat. The section is quite lengthy; I shall not read all of it. It provides for an examination of the books, vouchers, accounts, moneys, bonds, securities and other property in the treasury of the county by the commissioners as often as every six months each year, and provides also that the probate judge shall, once every six months, or oftener, if he deem it necessary, or whenever he is requested so to do in writing by one or more of the bondsmen of the treasurer, appoint two examiners of the treasury, and that upon being appointed they shall proceed forthwith to examine. It defines their duties very fully, and the sort of report that they shall make; and it contains this provision:

"The said accountants shall certify the exact amount of money in the treasury, together with the amount belonging to each particular fund, also all property, bonds, securities, vouchers, assets and effects as aforesaid in writing, in triplicate, one copy of which certificate shall be recorded in the books of the treasury, and filed by the treasurer in his office, and one copy shall be recorded and filed by the auditor of the county; one copy thereof shall be duly reported to the probate court and be entered of record therein, a copy of which shall be furnished by the probate judge for publication one week, in two newspapers of opposite politics, of general circulation in the county in which such examination is made, and said accountants so appointed and performing the duties therein required, shall be paid five dollars per day for the time necessary to the performance of the same, out of the county treasury, on a warrant drawn by the county auditor and approved by the certificate of said court."

That fee of five dollars per day to the accountants is the only fee provided for in this section of the statute or in the statutes providing for this examination.

But it will be observed that the statute requires considerable services of the probate judge; the matter of selecting and appointing these officers, which involves a certificate of their appointment, which they present to the treasurer as their authority; the preparing by him of a copy of their report which is to be furnished for publication, and recording of such report; and perhaps some other services which I have not mentioned. But there is no fee or compensation specifically provided for such services.

The section of the statutes which provide in a general way for the fees of the probate judge are Secs. 546 Rev. Stat. which contains what is called the "fee bill," is very lengthy, and specifies a great many things on account of which fees may be charged and the fees that may be charged therefor, and Sec. 547 Rev. Stat. which provides that "for any other services not herein provided for, the same fee shall be allowed as for similar services in the court of common pleas of the same county." Running through the statutes we find in ditch cases and in various other proceedings special provisions for a fee or other compensation in those particular cases, but the compensation provided for the bulk of the services to be performed by him is that provided for by Secs. 546 and 547. In Sec. 546 we find no provision for a fee or compensation that would be appropriate to the services provided for by Sec. 1129 Rev. Stat. It is claimed, however, that he should receive compensation to be based upon that provided for clerks of the court of common pleas in this county, under the provisions of Sec. 547. It is to be observed that the compensation here claimed is against the county. Plaintiff in error is claiming compensation from the county, and in view of that I call attention to a number of cases, decided by our Supreme Court, and a few by the circuit courts, which, it seems to us, are entirely inconsistent with the idea that compensation can be exacted from the county by an officer for services performed for the public, unless such compensation is specifically provided for by statute. Some of the cases that I shall cite do not come to this exact proposition, but they all have some bearing on it.

In Debolt v. Cincinnati Tp. (Tr.) 7 Ohio St. 237, it is said, "An officer whose fees are regulated by statute [29 O. L. 489; Sec. 1532 Rev. Stat.], can charge fees for those services only to which compensation is by law affixed." In the case of Anderson v. Jefferson Co. (Comrs.) 25

Millard v. Conrade.

Ohio St. 13, it is held that, "where a service for the benefit of the public is required by law, and no provision for its payment is made, it must be regarded as gratuitous, and no claim for compensation can be enforced." This rule is more fully stated in a later case of Strawn v. Commissioners, 47 Ohio St. 404, 408 [26 N. E. Rep. 635]. That was a claim by the county surveyor for making a record of a private survey. The court concludes that he is not required to make such records, and then says:

"However, were this not so, yet it does not follow that, because a private survey is required to be recorded by a public officer, the public is compelled to pay the fees for recording it. In the case before us no statutory provision has been shown directly authorizing payment out of the public funds of the fees of a county surveyor for recording a private survey; that, however, may not be necessary, for doubtless such an authority might be gathered by construction from the body of a statute in the absence of express words; but in such case the implication of a duty on the part of the public to pay must clearly appear. The fact that a duty is imposed upon a public officer will not be enough to charge the public with an obligation to pay for its performance, for the legislature may deem the duties imposed to be fully compensated by the privileges and other emoluments belonging to the office, or by fees permitted to be charged and collected for services connected with such duty or services, and hence provides no direct conpensation therefor, to be paid out of the public treasury."

Following these cases in the order of the dates when they were decided, I call attention now to the case of Butler Co. (Comrs.) v. Welliver, 5 Circ. Dec. 569, 571 (12 R. 440), the closing paragraph:

"It is not a pleasant thing to disallow claims of an officer of the court for services actually rendered by him, many of which are necessary and valuable, and for some of which he can receive no compensation from any other source. But, with an understanding of the law that they cannot be paid from the county treasury unless such payment is explicitly provided for, our duty is plain, and must be performed."

The next is the case of Jones v. Lucas Co. (Comrs.) 57 Ohio St. 189 [48 N. E. Rep. 882; 63 Am. St. Rep. 710], which went up from this county. The opinion is by Judge Spear. After citing these earlier cases decided by the Supreme Court, he says, page 209:

"The conclusion inevitably follows, that the auditor's services in making the report for the commissioners must be deemed, if not gratuitous, at least satisfied by the salary attached to his office, and that he is

not entitled to extra compensation for such services, payable out of the county treasury. And this conclusion follows, whether the sections quoted impose the duty on him to make such report, or devolve it primarily upon the commissioners, the duty of the auditor being only a general one to aid them, a question which it is not necessary to decide to dispose of the case.''

We find no specific compensation provided for these services, and we hold that as to this bill the court of common pleas did not err.

We next come to the question presented by the bill for holding an inquest of lunacy. For these services compensation is claimed under Sec. 719 Rev. Stat., which provides the costs and fees in inquests of lunacy:

"The taxable costs and expenses to be paid under the provisions of this chapter shall be as follows: To the probate judge with whom the affidavit is filed, the sum of two dollars for holding an inquest; for each warrant, certificate or subpœna he necessarily issues, the same fees as are allowed by law to the clerk of the court of common pleas for similar services; and the amount of postage on all communications to and from the superintendent which the judge is required to pay.''

And there are provisions as to the compensation of other officers.

It is conceded that the probate judge is entitled to the compensation specifically provided by this section of the statute in such cases, but it is contended on behalf of the county that in some of the charges in his fee bill it is apparent, that not confining himself to the fees provided by this section of the statute, the probate judge has undertaken to charge under Sec. 547 Rev. Stat. for other services that he has been required to perform, basing his claim upon the provision of that section that he is to have such compensation as the clerk of the court of common pleas shall have in like cases where a specific provision for his compensation is not made in the statute. In addition to these charges he has also made some charges under Sec. 546 Rev. Stat., especially the charge for making up a complete record at eight cents per one hundred words, $1.60. We are of the opinion that Sec. 547, which allows compensation such as is allowed the clerk of the court of common pleas, has no relation to services of this character performed by the probate judge, which are to be paid for by the public; that it has relation to causes and proceedings between private parties, and that that is what is provided for by Sec. 546; and Sec. 547 Rev. Stat. is intended to cover the cases or the items that may have been omitted from Sec. 546. We therefore hold that under Sec. 719 Rev. Stat. the probate judge can have no compensation other than

that actually provided for in Sec. 719. That does not provide compensation for making up a record. When we turn to Sec. 546, which does provide for compensation for services of that character, and undertake to apply it to lunacy cases, we meet with another difficulty, for it reads, "making up complete record in cause, eight cents for each hundred words, but no complete record shall be made in any case, except when the title of real estate is drawn in question, the court may order the same, or either party may require it at his own cost." We have had occasion to pass upon the meaning of the word "cause" when found in fee bills. Our decision on the subject will be found in the case of Clark v. Lucas Co. (Comrs.) 7 Circ. Dec. 427 (14 R. 349). The case went to the Supreme Court, Clark v. Lucas Co. (Comrs.) 58 Ohio St. 107 [50 N. E. Rep. 356]. The closing paragraph in the opinion in the case, which was by Judge Burket, reads as follows, page 112:

"The claim made by counsel for plaintiff in error, to the effect that each cause means each name, whether plaintiff or defendant, is not tenable. A name is not a cause, neither is a plaintiff or defendant a cause."

There the clerk of the court was asking for compensation for indexing and he made his cross indexes with reference to each name, and claimed that in each instance where he made that index it was an independent cause. The court held that that was not correct.

"The word *cause* is used in the sense of an action, or lawsuit. There may be many parties to an action but all combined constitute but one action, one lawsuit, one cause."

So it may be doubted whether the proceedings in lunacy cases are in the purview of the statute providing for the record of causes at all. But even if a cause, the record is not to be made where the title to real estate is not drawn in question, unless at the request of a party who may require it, at his own cost.

It is contended on the part of the plaintiff in error that that provision is exceedingly obscure; that it is impossible to get at the meaning of it, and the conclusion is that it should be ignored, or the statute should be regarded as providing for a complete record in all cases. But we had occasion to consider that provision, and we found it meant as I have expressed it, that the complete record was not to be made unless title to real estate was drawn in question, and where the title to real estate was not drawn in question, the party who desired it and requested it should pay for it. Our position upon that subject will be found in Millard v. Lucas Co. (Comrs.) 7 Circ. Dec. 115 (13 R. 518), affirming a decision by Judge Pugsley of the court of common pleas in Lucas Co.

(Comrs.) v. Millard, 4 Dec. 419 (4 N. P. 53), where the matter is more fully stated by the common pleas court. We affirmed his decision and approved his reasoning on the subject.

Our conclusion, therefore, is, upon the matter of the inquest of lunacy, that certain charges made are correct—those that come clearly within the purview of Sec. 719 Rev. Stat.—and the others are not correct; and such examination as we have made of this question convinces us that the fee bill made up tentatively by the counsel for the county, on page nine of his brief, sets forth all that may be legitimately charged under the section: First, two dollars for holding inquest; second, for each warrant, certificate or subpœna necessarily issued, the same fees as are allowed by law to the clerk of the common pleas court for similar services; and third, the amount of postage on all communications to and from the superintendent which the judge is required to pay. I believe these bills were disallowed *in toto;* we allow part, and the judgment will be modified in that respect as to that matter.

We come now to the question of fees charged in cases coming under the statute with reference to the Boys' Industrial School. That statute runs from Secs. 752 to 764b Rev. Stat. and then there are other provisions on the subject found in the truancy law, especially in Secs. 4022-4 and 4022-8 Rev. Stat.

Section 6470 Rev. Stat. provides:

"The judges of said probate courts shall be paid for their services in criminal cases such sums as the commissioners of said counties may allow, which sums shall be paid out of the county treasury of said counties, respectively, and said probate judges shall not receive any compensation by way of fees in any criminal business of which they have jurisdiction; but all costs, and all fines by said probate court imposed, including the fees of the judge, shall be collected in the same manner as fines and costs are now collected by the court of common pleas, and the same by said probate judges shall be paid into the county treasury."

It is urged here on behalf of the county that the allowance of the county commissioners to the probate judge for services in criminal business covers his services performed with reference to the Boys' Industrial School and with respect to the Girls' Industrial Home; that these services are services in criminal matters. On the other hand, it is contended on behalf of the probate judge, the plaintiff in error, that these are not criminal cases; and attention is called to the fact that under the statutes with respect to the Girls' Industrial Home, beginning with Sec. 768 Rev. Stat. there is no provision for the conviction of a girl of a criminal offense

before sending her to the industrial home, and also to the fact that under the statute with respect to compulsory education, providing for the sending of children to the industrial school or the industrial home, whether boys or girls, there is no provision for their conviction of a criminal offense before so sending them; that it is not required that the child shall be convicted of a crime; and it is urged that it would be wrong to undertake to brand a child as a criminal by treating these proceedings as criminal proceedings, in view of the absence of any specific provision of the statute that they shall be so regarded. It is urged by the plaintiff in error that the character of these proceedings is fixed by the statutes; that a proceeding against an incorrigible child or one who is a truant from school, or against a girl who is to be sent to the industrial home, is not a criminal proceeding; that therefore none of the proceedings should be regarded as criminal proceedings, and none of the provisions as criminal provisions. On the other hand, counsel for the county points out that under Sec. 753 Rev. Stat. a conviction of an offense is required as a condition precedent to sending a boy to the Boys' Industrial School, and he urges that that fixes the character of all proceedings under the statute as criminal proceedings.

We think that both counsel are partly right and partly wrong; that the proceedings are not the same in all cases, and have not the same character in all cases where the children are sent to these institutions by the probate judge; that if an immoral youth is convicted of an offense against the laws of the state under and in pursuance of Sec. 753 Rev. Stat. and for that reason is sent to the Boys' Industrial School, that is a criminal proceeding; that there must be a criminal prosecution, and it must be in the regular and ordinary methods of a criminal prosecution. There must be a complaint lodged against him as provided by law; he is entitled to a trial by jury; and that the prosecutor must proceed in all respects to his conviction as though he were prosecuted for the purpose of imposing the penalty of a fine or imprisonment provided by statute, instead of the purpose of sending the boy to the industrial school. On the other hand, where a proceeding is under Sec. 4022 Rev. Stat. because of the boy's or the girl's truancy, where no conviction of an offense is required, or no trial by jury is to be had, it does not resemble a criminal prosecution, and in such a case, it not being a criminal prosecution, the compensation of the judge is not fixed by Sec. 6470 Rev. Stat., but he may have his fees. He may have his fees in cases of boys sent to the Boys' Industrial School, for truancy, and girls sent to the Girls' Industrial Home for that or any other cause where conviction of offense is not required, and his fees are those

fixed for clerks of the courts of common pleas in like cases. This is authorized by Secs. 547, 759 and 4022-8 Rev. Stat. taken together.

Now, that these proceedings where a conviction of an offense is not required are not criminal proceedings has been held by our Supreme Court in two cases. The first case is that of Prescott v. State, 19 Ohio St. 184 [2 Am. Rep. 388]. The proceedings were had under the statute authorizing the establishment of houses of refuge and the subsequent enactment providing that in the cases provided for in the first statute, boys who were found to be offenders might be sent to the State Reform Farm. The court upholds the constitutionality of the act, and has this to say with respect to the proceedings, page 187:

"The provisions referred to in our state constitution relate to the preservation of the right of trial by jury, and to the rights of the accused in criminal prosecutions. We do not regard this case as coming within the operation of either of these provisions. It is neither a criminal prosecution, nor a proceeding according to the course of the common law, in which the right to a trial by jury is guaranteed.

"The proceeding is purely statutory; and the commitment, in cases like the present, is not designed as a punishment for crime, but to place minors of the description, and for the causes specified in the statute, under the guardianship of the public authorities named, for proper care and discipline, until they are reformed, or arrive at the age of majority. The institution to which they are committed is a school, not a prison; nor is the character of their detention affected by the fact that it is also a place where juvenile convicts may be sent, who would otherwise be condemned to confinement in the common jail or the penitentiary."

It will be observed the statute on the subject of the reform farm, which is now called the Boys' Industrial School, was drawn in question, and it was held that the proceeding to send a boy there is not a criminal proceeding; but the statute at the time of this holding was not as it is now; it did not then provide for the conviction of an offense. It was similar in its terms to the provisions in the statute with respect to the Girls' Home, and similar to the provisions of the statutes with respect to houses of refuge. In the statute on the subject of houses of refuge there is a provision setting forth the offenses for the commission of which an infant may be confined therein, and there are other provisions to the effect that unless required by the person put upon trial, there need be no record made of the proceeding, and provision is made to place incorrigible children therein; so that it is in no proper sense a criminal

Millard v. Conrade.

prosecution, because it does not result in the conviction of an offense. The conviction requires him to remain and be educated. The conviction provided for is incidental, and no record is made of it unless he shall require it. So it is with respect to the Girls' Industrial Home. The court may require that there shall be a criminal prosecution, and then the statute provides for the institution of such prosecution, and in such case, therefore, the probate judge would not be entitled to compensation for his services.

The statute (75 O. L. 61, Sec. 8) with reference to the reform school for boys provided that:

"Male youth, not over sixteen nor under ten years of age, may be committed to the reform school by any judge of a police, or judge of the court of common pleas, or the probate court, when, on complaint and proof by the parent, guardian, or next friends of any such youth, supported by the sworn statement of two respectable witnesses, it is shown that he, by reason of his incorrigible or criminal conduct, is beyond the control of such parent, guardian, or next friend, and that, from regard to his future welfare and the protection of society, he should be placed under restraint."

There is no such provision now in the statute with respect to sending boys to the industrial school.

Another case upon this subject is Cincinnati House of Refuge v. Ryan, 37 Ohio St. 197, 203. There the court refers with approval to the case of Prescott v. State, supra, and says this:

"The proceeding is purely statutory. It is intended to provide a summary method for caring for destitute children.

"The commitment is not designed as a punishment for crime, but to place destitute, neglected and homeless children, and those who are in danger of growing up as idle and vicious members of society, under the guardianship of the public authorities, for their proper care, and to prevent crime and pauperism. As to such infants, it is a home and a school, not a prison."

In the case of Quigley v. State, 3 Circ. Dec. 310 (5 R. 638), this question is adverted to, and the truancy or compulsory education law was there drawn in question, and was sustained. Reference is made in the opinion to Cincinnati House of Refuge v. Ryan, and Prescott v. State, supra, as applicable to proceedings under the truancy law.

Our conclusion upon this matter is that where boys are prosecuted for and convicted of offenses against the laws of the state, and are therefore sent to the Boys' Industrial School, no fees are allowable to the probate

judge to be paid by the county; but where they are sent up under the compulsory education law, or in cases where no prosecution and conviction is had, fees are to be allowed and paid, and the same is true in all cases where girls are sent to the Girls' Industrial Home.

Whether the bill in this particular case of State of Ohio v. Louis Shinaver would come under the one rule or the other, that is to say, whether it was a criminal prosecution or a proceeding under the truancy law, we are not advised by this record, and since error, if any occur, must affirmatively appear on the record, we must assume that it was a criminal prosecution, and affirm, unless counsel shall agree that it was a case under truancy law, in which case the record can be made to say so, and the bill will be allowed.

The case of the girl Lena Stern, who was sent to the industrial home, evidently was a proceeding under the statute to which I have referred, which does not require conviction of an offense, and as to that we hold that the bill should be allowed.

I believe no fault is found with the items in these last two bills, so that the decree of the court of common pleas will be modified in accordance with this opinion.

The judgment for costs in this court will go against the county.

**Hull and Haynes, JJ.,** concur.